# Pratt *versus* McCawley.
# Murphey, White, and Weaver *versus* Same.

Land was conveyed to a trustee for the separate use of a married woman for life, with remainder to be conveyed to trustees for her son, to pay him the rents and profits during life, and, at his death, to convey the same to such persons as her son shall by will appoint, and if he should die in his mother's lifetime without such appointment, then it should go to his legal heirs: *Held* that the son took an equitable fee simple in remainder in the property and could rightfully charge it with a mortgage in fee.

ERROR to the District Court, *Philadelphia.*

These were five actions of ejectment.   In each case John McCawley was plaintiff.   They were severally brought against S. Murphey, William R. White, D. Taylor Pratt, Maurice White and others, and Lydia M. Weaver.

They were brought for the one undivided third part of five

several contiguous lots of ground in the city of Philadelphia. McCawley, the plaintiff below, claimed an undivided third of the several lots.

Under the view taken by the Court, it is not necessary to state the chain of title back of the year 1823. At that time Mrs. Mary Tucker was the equitable owner in fee of four of the lots, and the legal owner in fee of the other. Being then about to be married to John Towers, she joined with him, on the 23d September, 1823, in a deed conveying these lots, *inter alia*, to Joseph Reed in fee, in trust for her separate use, with other limitations. The material part of the trust clause reads as follows: (p. 9)—"For the sole and separate use of the said Mary Tucker for and during all the term of her natural life, whether she be covert or sole, notwithstanding her coverture; and from and immediately after her decease, then to grant, convey, and assure the same to trustees for the following named children of her the said Mary Tucker, viz., Susan Lavinia Wardle, the wife of Thomas Wardle, for her sole and separate use, as if she were a feme sole and unmarried; William Eldridge Tucker and Henry Mereville Tucker, their respective heirs and assigns, as tenants in common, and not as joint tenants, in trust for the uses in the next instrument declared."

In the annexed instrument it was provided, among other things, that the trustee should, "on the death of the said Mary Tucker in the lifetime of her said sons, grant and convey the reversionary interest granted or intended to be granted and secured to them, to such trustee or trustees as may be mutually agreed upon, to pay the rent, issues, and profits to them during the term of their natural lives; and from and immediately after their decease to grant, convey, and assure the same premises and reversionary interest granted to them by the indenture (of 23d September, 1823), to such person or persons, and for such estate or estates as they the said William Eldridge Tucker and Henry Mereville Tucker by their last wills shall severally direct and appoint; and if they, or either of them, shall die without making such disposition and appointment, in the lifetime of the said Mary Tucker, the estate and premises aforesaid shall, on the death of the said Mary, go to and be legally vested in the respective legal heirs of the said William E. Tucker and Henry M. Tucker, in the same manner as if they had survived her."

John Towers died in May, 1831, and his widow, formerly Mary Tucker, died in 1835, leaving the above-named children surviving her. On the 7th October, 1836, Joseph Reed conveyed the trust estate to Francis J. Troubat, to hold it upon the conditions and trusts of the marriage settlement. On the 9th December, 1839, Henry M. Tucker mortgaged in fee his interest in the lots in controversy, whatsoever it might be at law or in equity, to the plaintiff, McCawley, and in 1840 died unmarried and without issue.

[*Pratt v. McCawley.*]

After the death of Henry M. Tucker, McCawley prosecuted his mortgage, and on a sale under it on a *lev. fa.* became himself the purchaser, and received his deed from the sheriff, duly acknowledged. Under this title he claimed to be the owner of the one-third of the lots which had been held by Henry M. Tucker. The surviving brother and sister of Henry resisted this claim, and on their part it was contended that the title of Henry terminated with his life, and that they became the sole owners in fee.

In each case judgment was entered for the plaintiff.

Error was assigned to such judgments.

*Meredith*, with whom were *E. K. Price* and *Ingraham*, for plaintiffs in error.

*Cadwalader*, for defendant in error.

The opinion of the Court was delivered, January 27, 1853, by

LOWRIE, J.—The argument of the plaintiffs in error claims that, by the deed of 1810, of James Tucker to Jarius Hutchinson, Mary Tucker obtained an equitable fee in four of these lots, the other one having been acquired in legal fee by another title not in dispute. We get right into the heart of this case by assuming this position. It brings us at once to the construction of the settlement deed of 1823, which was preliminary to the marriage of Mary Tucker with John Towers. By that deed she conveyed these lots to Joseph Reed, his heirs and assigns, in trust for herself for life, and in further trust to convey the same on her death to trustees for her children, their heirs and assigns, adding, "in trust for the uses in the next instrument declared." So far as is pertinent to the share of her son Henry, those uses were, that the trustee should, on her death, convey "the reversionary interest" (so called) secured to him, to trustees, who were to pay him the rents and profits during life, and, at his death, to convey the said reversionary interest to such persons as said Henry should by will appoint, and if he should die in his mother's lifetime, without such appointment, then the said estate should go to and be legally vested in his legal heirs. The deed of Reed to Troubat, made in 1836, after the mother's death, was intended merely to execute the trust vested in Reed, and it does no more. The vital question of the cause therefore is, what estate did Henry M. Tucker take under the settlement deed of 1823?

It was in all its stages an equitable estate, if it was not an executed use under the statute or under our law that treats as done what ought to be done, and thus practically fuses the legal and equitable estates, where there is no equity demanding the preservation of the distinction. It is therefore unnecessary to inquire,

[Pratt v. McCawley.]

whether with us the fact, that one part of the estate is legal and the other equitable, would or would not affect the result. We treat all the parts as equitable, as they profess to be. Then the whole legal estate was vested in Joseph Reed, in trust, after the mother's death and as to the third part now in dispute, for Henry, his heirs and assigns. This, of course, vests in Henry an equitable fee simple in remainder.

How is this affected by the declaration which is annexed? That gives to Henry an equitable life estate, when it directs the trustees to pay him the rents, issues, and profits for life; but that is included in the equitable fee simple already given. It gives him also a power of appointment; but that does not take away the fee simple already granted, nor by any proper implication reduce it. If he dies without appointment in his mother's lifetime, the estate is to go to his heirs; but this provision may be set aside, as the contingency did not happen. Here, then, is a life estate included in the fee, a power of appointment excluded by his parting with the subject of it, if it is not also merged in the fee, and a remainder limited on an event that never happened, and which was surplusage in any event, and the residuum is an absolute fee simple in Henry M. Tucker.

If the deed of 1810 vested only a life estate in the mother, then Henry inherited one-third part of four of the lots from his father in fee. If, by that deed, his mother took a fee, then, under the deed of 1823, he took a fee in them. His mother's fee in the other lot is not questioned, and, under the deed of 1823, one-third of that was vested in Henry.

Henry M. Tucker having, therefore, an equitable fee at the time of giving the mortgage, that title passed to McCawley under the sale upon the mortgage judgment, and justifies the judgments rendered by the Court below in these cases.

Judgments affirmed.